Argued and submitted May 18, at Wallowa County Courthouse, Enterprise, affirmed December 13, 2006, petition for review denied March 7, 2007 (342 Or 473)

# STATE OF OREGON,
*Respondent,*

*v.*

# PHILIP DUANE CHAPMAN,
*Appellant.*

## 200322606; A124223

149 P3d 284

Mary M. Reese argued the cause and filed the brief for appellant.

Katherine H. Waldo, Senior Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Paul L. Smith, Assistant Attorney General.

Before Edmonds, Presiding Judge, and Ortega, Judge, and West, Judge pro tempore.

WEST, J. pro tempore.

**WEST, J. pro tempore**

Defendant appeals his convictions for two counts of assault in the second degree. ORS 163.175. He contends that the trial court erred in refusing to give a requested jury instruction for a lesser-included offense of assault in the third degree. Defendant also contends that the trial court committed plain error when it gave the "liability for probable consequences" instruction[1] to the jury regarding the state's aid and abet theory. We affirm.

■ In reviewing the trial court's refusal to instruct the jury on an applicable lesser-included offense, "[w]e review the evidence in the light most favorable to the establishment of facts that would require those instructions." *State v. Boyce*, 120 Or App 299, 302, 852 P2d 276 (1993) (citation omitted). On the evening of November 27, 2003, the victim, Thomas Singhose, was at the home of Genie Gibbons and Mark Gailey in Springfield, Oregon. At around 10:00 p.m., four men came to the house. The four men were defendant, Joe Emrich, Delano Oscar, and Tommy Adams. At the time the four men came to the house, Singhose was sleeping on the couch, and the other persons were in the back bedrooms. When the four men knocked on the door, Gibbons answered it and led them directly into her bedroom. Singhose, who had awakened at the sound of the knock, said nothing to the men, and the men, although they saw him, said nothing to him. After a few minutes, the four men left Gibbons's bedroom, where Gibbons remained. The men walked toward Singhose with Oscar in the lead. According to Singhose, Oscar told Singhose that he needed to leave. Singhose reached for his shoes and began to get up. Oscar punched him four times on his face. Singhose saw Adams holding a club or a stick. Singhose pushed Oscar away and tried to leave by the front door. Oscar blocked his way, and someone pulled Singhose back into the room.

The four men, including defendant, then assaulted Singhose. He testified that he was subjected to a rain of blows. He was stabbed at least twice and hit on the top of his

---

[1] UCrJI 1052.

head with nunchakus. He was also hit in the face by something really hard, and he thought it could have been a wooden stick or the nunchakus. Singhose did not know who specifically stabbed him or hit him with the nunchakus. Although he had no direct recollection of specific blows by defendant, Singhose testified that defendant "was right on top of me with the rest." Singhose explained, "I'm feeling blows from this side. I look. There's [defendant] right there. That's—I may not be able to tell you what specific blow he dealt, but a blow nonetheless."

At some point, Singhose picked up one handle of the nunchakus, which had broken at the chain, and turned toward the door. Adams was between Singhose and the door. The other three men were behind Singhose. Adams told Singhose that he would stab him if he did not drop the nunchakus. Singhose, after observing blood coming out of his chest, told Adams that he had already stabbed him at least once or twice. When the men saw his injuries, everything stopped, and the fight was over. Singhose does not know why the four men assaulted him.

Singhose suffered serious physical injuries from the knife wounds, which punctured his lung and diaphragm, nicked his liver, and sliced the back of his head, back, and forearm. He has scars from those injuries. The nunchakus caused physical injury to his head.

Oscar, who pleaded guilty to assaulting Singhose, gave a slightly different account of the assault. He testified that the four men did not discuss knifing or beating Singhose in the car on the way over to the house. Oscar testified that, after they arrived at the house, he and Adams went to a back bedroom and that he did not know where defendant and Emrich went. When Oscar returned to the living room, he walked up to Singhose and punched him once on the nose in retribution for a rumor that Singhose had spread about him. Defendant, Adams, and Emrich were in the living room at the time. None of the other men, including defendant, knew of Oscar's dispute with Singhose or his intent to punch him in the nose. After hitting Singhose, Oscar turned away and began to converse with Gailey. During the conversation, a commotion broke out, and Oscar turned around to see that

Adams had Singhose by his shirt collar and was bending him over and swinging nunchakus to the top of his head. Defendant was on top of Singhose as he was bent over. Emrich was stabbing Singhose. All of this was happening at about the same time. Singhose was trying to get to the door with one-half of the broken nunchakus in his hand. Oscar did not remember defendant specifically hitting Singhose, as he was concentrating on the two men who were holding the weapons. Oscar never saw a weapon in defendant's hands. According to Oscar, he pulled the three men off Singhose and pushed Singhose out the door.

Defendant testified at length at trial. He denied ever hitting or kicking Singhose. Defendant claimed that his only action in the melee was to attempt to rescue a dog and a young man who were in harm's way due to the others assaulting Singhose.

The indictment charged:

### "COUNT 1

"The defendant, acting together with Thomas Odell Adams, Delano Franklin Oscar Jr., and others as yet unidentified,[2] on or about November 27, 2003, in Lane County, Oregon, did unlawfully and intentionally cause serious physical injury to Thomas Neil Singhose by means of a dangerous or deadly weapon, a knife * * *[.]

"The State further alleges that the above-named victim did not substantially contribute to the commission of the above-described offense by precipitating the attack;

### "COUNT 2

"The defendant, acting together with Thomas Odell Adams, Delano Franklin Oscar Jr., and others as yet unidentified, on or about November 27, 2003, in Lane County, Oregon, did unlawfully and knowingly cause physical injury to Thomas Neil Singhose by means of a dangerous or deadly weapon, numchucks [sic] * * *."[3]

---

[2] During trial, the court granted the state's motion to strike "Thomas Odell Adams, Delano Franklin Oscar Jr., and others as yet unidentified" from each count of the indictment, replacing it with the words "others." Therefore, each count alleged, in part: "The defendant, acting together with others, on or about November 27, 2003 * * *." This amendment to the indictment was not material, and it does not affect our opinion.

[3] The state never explained why the phrase "acting together with Thomas Odell Adams, Delano Franklin Oscar Jr., and others as yet unidentified" was

The trial court instructed the jury on the elements of first-degree, second-degree, and fourth-degree assault. On Count 1, the trial court instructed that second-degree assault and fourth-degree assault were lesser-included offenses of the charged first-degree assault. On Count 2, it instructed that fourth-degree assault was a lesser-included offense of the charged second-degree assault.[4] Defendant requested a lesser-included instruction for third-degree assault as to both counts.[5] The state objected, arguing that

"[t]he state does not allege aided by another actually present and that's a material element of that offense.

"So Assault III will never be a lesser included of this indictment. Acting together with does not mean that they're actually present and you have to be actually present. While the facts may show that, the state has not plead[ed] that."

The trial court agreed with the state and declined to give the requested instruction. Ultimately, the jury acquitted defendant of assault in the first degree and convicted him of assault in the second degree on Count 1. On Count 2, the jury convicted defendant of assault in the second degree. Defendant's convictions were apparently based on an aid and abet

---

included in both counts of the indictment. The state apparently did not intend to charge assault in the third degree. The state was not charging conspiracy, nor was the state joining the others in a joint indictment. It appears that this language was intended to bolster the state's aid and abet theory. Otherwise, the phrase has no legal significance and is surplusage.

[4] The jury was instructed that the *mens rea* for first-degree assault was "intentionally" and for second-degree assault it was "knowingly." The court further instructed the jury that they could find that defendant either intentionally, knowingly, or recklessly caused Singhose's injuries to find him guilty of fourth-degree assault. The trial court also gave an order of analysis instruction, UCrJI 1011, Multiple Lesser Included Offenses Order of Deliberation, and an aiding and abetting instruction on each count of the indictment.

[5] Defendant submitted the following instruction:

"To establish the lesser included of Assault III, the state must prove[ ] beyond a reasonable doubt each of the following elements:

"(1) The act occurred in Lane County, Oregon;

"(2) The act occurred on or about November 27th, 2003;

"(3) [Defendant] intentionally or knowingly caused physical injury to Thomas Neil Singhose; and

"(4) [Defendant] was aided by another person actually present."

theory, as there was no evidence that either the nunchakus or the knife was in defendant's hands during the melee.

Defendant appeals, asserting that the trial court erred in failing to give the requested lesser-included instruction of assault in the third degree, involving knowingly causing physical injury to another while being aided by another person actually present. He argues that facts alleged in the indictment included conduct that described the elements of third-degree assault and that there was evidence from which the jury rationally could have found defendant guilty of third-degree assault and not guilty of second-degree assault.

ORS 136.465 provides, in part, that a "defendant may be found guilty of any crime the commission of which is necessarily included in that with which the defendant is charged in the accusatory instrument * * *." A defendant thus may be convicted of any lesser-included offense of the charged offense. An offense is a lesser-included of another if it meets "either one of two tests: (1) that one offense is 'necessarily included' in the other, by virtue of the elements of the former being subsumed in the latter; or (2) that the facts alleged in the indictment expressly include conduct that describes the elements of the lesser included offense." *State v. Guzman*, 140 Or App 347, 351, 914 P2d 1120 (1996) (citations omitted). Whether that second test is met "must be satisfied on a case-by-case, as pleaded, basis." *State v. Cook*, 163 Or App 578, 585, 989 P2d 474 (1999). A defendant is entitled to a jury instruction on a lesser-included offense if the evidence and all reasonable inferences support submission of the lesser charge. *State v. Cunningham*, 320 Or 47, 58, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995).

Here, defendant does not contend that third-degree assault is necessarily included in first-degree or second-degree assault. Rather, he argues that the indictment alleged conduct that describes the elements of third-degree assault.

A person commits third-degree assault—the requested lesser-included offense in this case—if the person "[w]hile being aided by another person actually present, intentionally or knowingly causes physical injury to another[.]" ORS 163.165(1)(e). Defendant concedes that the indictment omits the statutory language "while being aided

by another person actually present," but contends that the facts alleged in both counts of the indictment include conduct that describes that element of assault in the third degree. Defendant points out that both counts allege that defendant acted together with other persons to assault the victim and that this language necessarily implies that the others were actually present.

The state concedes that, according to the evidence admitted at trial, defendant aided and abetted the other persons actually present, but asserts that the indictment did not allege that fact expressly or implicitly. The state points out that, under an aid and abet theory, the others could have acted together with defendant by driving defendant to the crime scene and then leaving before the crime was committed. Thus, the state argues, alleging that a person acted "together with others" does not necessarily imply that the others were *actually present* and *aiding* the defendant. We agree with the state.

Acting together is not necessarily the same as aiding someone while actually present. "Together" has a number of different meanings, including "**1 a :** in or into one place, mass, collection, or group * * * **3 a :** at one time **:** SIMULTANEOUSLY, COINCIDENTALLY." *Webster's Third New Int'l Dictionary* 2404 (unabridged ed 2002). Two or more persons could act as a "group" and yet not be in the same place. Likewise, the mere fact that persons are acting at the same time or even in the same place does not establish that they are aiding one another. Thus, we conclude that the indictment did not specifically allege the lesser-included offense of third-degree assault. *See State v. Zimmerman*, 170 Or App 329, 334-35, 12 P3d 996 (2000) (indictment alleging that a defendant " 'did use and attempt to use a dangerous weapon' " does not necessarily allege that the defendant represented to the victim or others that he was armed with a dangerous weapon); *Cook*, 163 Or App at 586-87 (indictment did not allege the element of extreme indifference to the value of human life merely because it alleged that the defendant caused serious physical injury to the victim); *see also State v. Moroney*, 289 Or 597, 616 P2d 471 (1980) (indictment for second-degree assault, which alleged only that the defendant intentionally

caused serious physical injury, did not support menacing conviction, because menacing requires that the defendant attempted to place the victim in fear of imminent serious physical injury).

Our decisions in *State v. Moses*, 165 Or App 317, 997 P2d 251, *rev den*, 331 Or 334 (2000), and *State v. Torres*, 182 Or App 156, 48 P3d 170, *adh'd to on recons*, 184 Or App 515, 59 P3d 47 (2002), are not to the contrary. In *Moses*, a defendant charged with attempted aggravated murder (which required intentional conduct) sought a jury instruction on the crime of recklessly endangering another person (which required reckless conduct that creates a substantial risk of serious physical injury to another). *Moses*, 165 Or App at 320-22. The indictment alleged that the defendant had intentionally attempted to cause the victim's death by firing shots into a van occupied by the victim. *Id.* at 322. We concluded that the indictment described the elements of reckless endangerment, because it described a reckless act that created a substantial risk of serious physical injury. *Id.*; *see also Cook*, 163 Or App at 582 (noting that, under ORS 161.115(3), a reckless mental state is subsumed within an intentional mental state). Similarly, in *Torres*, the defendant was convicted of second-degree assault as a lesser-included offense of first-degree assault, based on an indictment alleging that he had intentionally caused serious physical injury by shooting the victim. *Torres*, 182 Or App at 158. We concluded that the allegation also was sufficient to allege that the defendant had recklessly caused serious physical injury to the victim in circumstances that manifested an extreme indifference to the value of human life, because the act of shooting another human being "could, in itself, demonstrate an indifference to the value of human life." *Id.* at 162. Here, by contrast, the allegation in the indictment—that defendant was "acting together with" others—does not, *in itself*, demonstrate that defendant was aided by others actually present. As discussed above, it is possible to act together with others without being aided by others who are actually present. The specific allegation in the indictment, therefore, does not expressly include conduct describing the elements of third-degree assault.

Also, in both *Moses* and *Torres*, we concluded that the allegations in the indictments were sufficient to satisfy particular mental states that were not specifically pleaded.[6] *Torres*, 182 Or App at 161; *Moses*, 165 Or App at 322-23. A defendant can be acting under one of six different mental states while committing the same physical act.[7] By contrast, this case involves the discrete element of "being aided by another actually present." Unlike the *mens rea* elements at issue in *Moses* and *Torres*, the element that a defendant was "aided by another actually present" involves a factual circumstance that existed at the time the crime was committed and that had nothing to do with defendant's mental state. We do not believe that the principles articulated in those cases regarding mental states are applicable here.[8]

Because we conclude that defendant was not entitled to an instruction on third-degree assault, we do not reach the issue whether a rational jury could find defendant not guilty of second-degree assault and guilty of third-degree assault. Nor do we reach the state's harmless error argument.

In his second assignment of error, defendant claims that the trial court committed plain error by giving an "aiding and abetting" jury instruction that included the "natural and probable consequences" rule. Although defendant did not object to that instruction, he now claims that it is plain error. We conclude that this assignment of error does not satisfy the requirements for review as plain error and reject it without further discussion.

Affirmed.

---

[6] We reached a similar conclusion in *State v. Leckenby*, 200 Or App 684, 688-90, 117 P3d 273 (2005).

[7] ORS 161.085 provides for the descending mental states of intentionally, knowingly, recklessly, and with criminal negligence. The manslaughter and assault statutes created the fifth *mens rea* of recklessly "under circumstances manifesting extreme indifference to the value of human life." *See* ORS 163.118; ORS 163.165; ORS 163.175. The aggravated murder statute creates a sixth mental state of "personally and intentionally." ORS 163.095(2)(d).

[8] The significance of the discrete element of "being aided by another actually present" is apparent from the commentary to the criminal code, which indicates that the element reflected the potential of increased terror to the victim. Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2018, Mar 19, 1991, Tape 55, Side A (statement of Rep Ray Baum).