Argued and submitted May 30, conviction for second-degree assault reversed and remanded; remanded for resentencing; otherwise affirmed August 29, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KEVIN WARREN JACKSON,
*Defendant-Appellant.*

Deschutes County Circuit Court
09FE0735ST; A144967

284 P3d 1266

Joshua B. Crowther, Chief Deputy Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Janet A. Klapstein, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Brewer, Judge, and Sercombe, Judge.

BREWER, J.

**BREWER, J.**

Defendant appeals a judgment of conviction for assault in the second degree, ORS 163.175, arguing that the trial court erred in declining to instruct the jury on the lesser-included offense of fourth-degree assault.[1] Defendant contends that he was entitled to such an instruction because he adduced evidence at trial that he did not knowingly use a dangerous weapon when he stabbed the victim in the back with a folding knife. We reverse and remand the conviction for second-degree assault and otherwise affirm.

Count 3 of the indictment in this case charged that defendant committed second-degree assault under ORS 163.175(1)(b) in that he "knowingly cause[d] physical injury to another by means of a dangerous weapon, to-wit: a knife."[2] It is a well-established rule that an indictment of one offense includes, by necessary implication, charges of lesser-included offenses. *State v. Gibbons*, 228 Or 238, 242, 364 P2d 611 (1961); ORS 136.465.[3] "A lesser included offense is one that is included either in the statutory framework defining the greater and lesser offenses or in the accusatory instrument itself." *State v. Wille*, 317 Or 487, 495 n 7, 858 P2d 128 (1993). In *State v. Perks*, 118 Or App 336, 847 P2d 866, *rev den*, 316 Or 142 (1993), we held that an indictment charging the defendant with assault in the second degree also implicitly charged him with the lesser-included offense of assault in the fourth degree under ORS 163.160.[4] As

---

[1] Defendant also was convicted of menacing, ORS 163.190, and two counts of unlawful use of a weapon, ORS 166.220. Those convictions are not at issue on appeal.

[2] ORS 163.175(1) provides, in part:

"A person commits the crime of assault in the second degree if the person:

"*****

"(b) Intentionally or knowingly causes physical injury to another by means of a deadly or dangerous weapon[.]"

[3] ORS 136.465 provides:

"In all cases, the defendant may be found guilty of any crime the commission of which is necessarily included in that with which the defendant is charged in the accusatory instrument or of an attempt to commit such crime."

[4] ORS 163.160 provides, in part:

"(1) A person commits the crime of assault in the fourth degree if the person:

"(a) Intentionally, knowingly or recklessly causes physical injury to another[.]"

explained below, for present purposes, we focus on the issue whether the trier of fact could have convicted defendant of violating ORS 163.160(1)(a), but not ORS 163.175(1)(b), based on evidence that defendant did not act knowingly—which is the pleaded mental state in this case—in using a knife to cause physical injury to the victim.

A defendant is entitled to an instruction on a lesser-included offense "if there is a disputed issue of fact enabling the jury to find that all the elements of the greater offense have not been proven, but that all the elements of one or more of the lesser offenses have been proven." *State v. Naylor*, 291 Or 191, 195, 629 P2d 1308 (1981); *see also State v. Cunningham*, 320 Or 47, 58, 880 P2d 431 (1994) (same). "In reviewing the trial court's refusal to instruct the jury on an applicable lesser-included offense, '[w]e review the evidence in the light most favorable to the establishment of facts that would require those instructions.'" *State v. Chapman*, 209 Or App 771, 773, 149 P3d 284 (2006), *rev den*, 342 Or 473 (2007) (quoting *State v. Boyce*, 120 Or App 299, 302, 852 P2d 276 (1993) (citation omitted)). The application of the foregoing principles is the striking point on appeal in this case.

At approximately three o'clock in the morning, defendant and his girlfriend, Palmer, were riding home on their bicycles when they cut in front of a car. Inside the car were McAllister and her companion, Bruton. Defendant and Palmer had been drinking alcohol and smoking marijuana for most of the evening. Bruton and McCallister exchanged words with defendant, and defendant and Palmer followed the car into the parking lot of an apartment complex. Bruton got out of the car and confronted defendant. McAllister saw a knife in defendant's hand. Bruton, who stood six-feet six-inches tall and weighed 330 pounds, began fighting with defendant, who weighed 135 pounds and was five-feet six-inches tall. Bruton overpowered defendant and began beating his head against the ground and the hood of the car. In the meantime, Palmer had gotten hold of defendant's knife and she and McAllister began grappling. McAllister placed Palmer in a "bear hug," and the two of them struggled and screamed.

The victim, who was in a nearby apartment, heard McAllister's screams and recognized her voice; she was his friend, and he decided to intervene. The victim picked up a dog chain, which he wrapped around his hand, and stepped outside. He saw McAllister and Palmer grappling over the knife; behind them, defendant was being beaten by Bruton. The victim ran up to McAllister and Palmer and, as he did so, Palmer broke free from McAllister's hold and slashed at the victim's face with the knife. She missed, and the knife flew out of her hand and fell to the ground. The victim told McAllister to get into the apartment and pulled her away from Palmer. The victim then went back into the apartment to get his cell phone so he could call the police; when he came back outside, Palmer picked up the knife and charged at him. The victim fended her off by swinging the dog chain toward her. Palmer backed off, and the victim began calling 9-1-1.

Before he could dial the number, defendant charged at him screaming, "I'm going to kill you." Defendant hit the victim with his fists, but the victim overpowered him and began beating defendant's head against the ground. Having temporarily subdued defendant, the victim again tried to call 9-1-1 because he was concerned that he had injured defendant. As the victim was talking to a dispatcher, defendant again charged him and stabbed him in the head with the knife. The victim threw defendant against a car, and, as they were struggling, defendant stabbed the victim in the back. Not realizing that he had been stabbed in the back, the victim again overpowered defendant and hit him several times, leaving defendant collapsed on the ground.

The victim ran into the apartment, where a companion told him that he had been stabbed in the back. Bruton, McAllister, the victim, and the companion all got into McAllister's car to drive to the hospital. As they were leaving the parking lot, defendant charged at the car and grabbed onto it as it was moving. After a few moments, defendant lost his grip, falling once again to the pavement. Defendant was later examined at a hospital and diagnosed with, among other injuries, a concussion. The victim also was examined by a physician, who testified that the victim

had sustained a deep penetrating knife wound to his upper back but that it was not possible to determine the direction of the wound. The doctor also testified that the victim had sustained a shallow knife wound to the side of his head.

For his conduct, defendant was charged, among other offenses, with second-degree assault based on the stab wound to the victim's back. The indictment alleged that,

> "the said defendant *** on or about the 13th day of June 2009, in Deschutes County, Oregon, did unlawfully and knowingly cause physical injury to another by means of a dangerous weapon, to-wit: a knife[.]"

At trial, defendant advanced two theories of defense. First, he argued that he had acted reasonably in reacting to what he perceived to be the victim's threats against Palmer and, subsequently, in reacting to what he perceived to be the victim's attack against him. Second, defendant argued that, as a result of the beatings that he had absorbed—particularly the injuries inflicted when Bruton and the victim had slammed his head against the pavement—he had not been coherent during the later part of the altercation and, thus, he had not "knowingly" used the knife when he charged at the victim the second time.

Defendant testified in his own defense and admitted to having been drinking alcohol and using marijuana before the altercations. Defendant described his intoxication level as "five" on a scale of one to 10. He also testified that he had no problem riding his bicycle and that he was "not really drunk or to the point of being belligerent. I was coherent. I could have conversations with people." Defendant testified that, as was his usual practice, he was carrying a pocket knife in the front pocket of his pants. Defendant repeatedly stated that he did not remember the altercations that occurred after his initial encounter with Bruton. Defendant stated that he could not remember fighting with Bruton, but that he remembered hearing Palmer scream and that he thought she was "getting beat up." According to defendant, the next thing he remembered was the victim "attacking me and after that, I think I remember grabbing onto the car." Defendant testified:

"I remember grabbing onto the car because I thought they were trying to get away or something or maybe they had gotten [Palmer] in the car or something. Because at that point, I didn't know what the whole thing was started over. I just remember regaining consciousness while I was fighting [Bruton] and not knowing what, what it was about."

When asked about the knife, defendant testified that

"I remember kind of regaining consciousness and the whole thing had already been going on. Bruton and me were, I think, had been engaged, had been fighting. And then I just remember having the knife in my hand and I think I was trying to scare them away from me or something."

Defendant also testified about statements that he had made to an investigating police officer. Defendant stated that he had been frustrated with his inability to remember the encounter, and that he believed that the officer thought that he was lying. Defendant testified that

"I didn't believe—I didn't feel that I had stabbed [the victim]. I knew that I was, you know, I was fighting with him. But I never knew at any point, like he never, you know, screamed or nothing ever happened like that, that I remember. So I just didn't know that I had stabbed him. I don't remember stabbing him."

Shortly thereafter, the following colloquy occurred between defense counsel and defendant:

[Defense counsel]: "Do you have any clear recollection of stabbing [the victim]?"

[Defendant]: "No."

[Defense counsel]: "Do you have a clear recollection of having a knife in your hands while you were fighting with [the victim]?"

[Defendant]: "Not really, no."

[Defense counsel]: "Well, what do you mean by 'not really?'"

[Defendant]: "I don't remember having a knife when I was fighting."

Defendant also expressed surprise and concern when he was told, at the hospital, that the victim had been stabbed in the head and back.

On cross-examination, the prosecutor asked defendant about the extent of his memory of the incident. Defendant replied, "I remember the events up until whatever incident took place. I guess maybe hurting my head, I lost a few minutes before it happened." When questioned about his description to an investigating officer of the victim's stab wound as "just a poke," defendant explained that

> "I think I was trying to communicate that if I had stabbed [the victim], that it really wasn't something that I was trying to, you know, harm him. I wasn't trying to—if I had done it, I wasn't trying to kill him or anything. It was just a reaction to him, you know, trying to hurt me and [Palmer]."

After the close of the evidence, defendant requested a jury instruction on fourth-degree assault as a lesser-included offense of the second-degree assault charge. The parties and the trial judge engaged in an off-the-record discussion about jury instructions in the judge's chambers; thus, we do not have a record of any reasons that the court may have given for rejecting the proffered instruction. However, the court did not give the requested instruction.[5] After the court instructed the jury, defense counsel excepted as follows:

> "My exception would be to the omission of the lesser-included offense of assault four. I asked for that. I believe it's supported by the facts. We had extensive discussions in chambers and I was denied that instruction."

In closing argument, defense counsel argued that, because of the concussion and other injuries that defendant sustained during his altercations with Bruton and with the victim, as well as the chaotic nature of the altercation between the victim and defendant:

> "[W]e don't know at what point either of those knife wounds were sustained. There is no proof, certainly no proof beyond a reasonable doubt, what [defendant's] mindset was or at

---

[5] The court did instruct the jury regarding the issues of self-defense and voluntary intoxication.

what particular point in the altercation those knife wounds were sustained.

"* * * * *

"And ask yourself if [defendant] did act reasonably under the circumstances from what he understood was going on at that time. Did he act intentionally? Listen to [defendant's] reaction when he is informed that [the victim] was stabbed in the head. Ask yourself if that's the reaction of someone who acted intentionally, with knowledge."

The jury convicted defendant, and this appeal followed.

On appeal, defendant contends that there was evidence in the record to support an instruction on the lesser-included offense of fourth-degree assault. In particular, defendant asserts that the jury could have found that he violated ORS 163.160(1)(a), but not ORS 163.175(1)(b), based on evidence that he did not act knowingly in using a knife to cause physical injury to the victim. Defendant relies on this court's decision in *Boyce* for the proposition that, although "the jury was not required to believe either the state's or the defendant's versions completely[,] *** [a] jury could accept a composite version in which defendant intended to cause [the victim] injury, but not by employing the dangerous weapon."

The state remonstrates that defendant's reliance on *Boyce* is misplaced because, unlike in that case, defendant here "had no memory of the event, and could only speculate about what had occurred." According to the state, defendant's triable theories of defense were limited to self-defense and diminished capacity based on intoxication.[6] In the end, the state's argument depends on the premise that, in light of the vagueness of defendant's testimony and his repeated invocations of faulty memory, no reasonable jury could have found that he did not knowingly stab the victim. We disagree.

---

[6] The state also initially argued that defendant was not entitled to a jury instruction on fourth-degree assault because the culpable mental state for that offense is recklessness, and ORS 161.125 precluded defendant from relying on a reckless theory because of his voluntary intoxication. Following oral argument in this case the state, by letter, abandoned its argument under ORS 161.125. Accordingly, we do not address it further.

In *Boyce,* the defendant was charged with second-degree assault and sought an instruction on the lesser-included offense of fourth-degree assault. 120 Or App at 304. The defendant had engaged in an altercation with another woman in a bar. The defendant testified that she lost her balance and, in attempting to regain it, had swung her arms forward, causing a broken beer glass in her hand to come in contact with the victim's face. The defendant claimed that, although she knew that she was holding the beer glass, she had not realized that it was broken. *Id.* at 305. The state's theory was that the defendant had intentionally slashed the victim's face with the glass; the defendant argued that she did not know the glass was broken, and, thus, she had not intentionally used a dangerous weapon. *Id.* We concluded that the trial court erred in denying the requested instruction on fourth-degree assault. As we explained,

> "the jury was not required to believe either version completely. Rather, it could have found, based on a composite of evidence, that defendant intended to cause the victim a physical injury but did not intend to cause it by a dangerous weapon. Because that would constitute assault in the fourth degree, the court erred in not giving defendant's requested instruction on that offense."

*Id.* at 305.

Although the defendant's testimony in *Boyce* was more comprehensive than defendant's testimony here, defendant's testimony was nonetheless sufficient, if believed, to permit the jury to find that, if he stabbed the victim, he did not do so knowingly. The state's disparagement of defendant's credibility invites us to weigh the evidence, an exercise that we have previously refused to undertake in determining whether the refusal to give a lesser-included jury instruction could be "harmless error." *See State v. Berry,* 238 Or App 277, 280, 242 P3d 666 (2010) ("[o]ur inquiry, for purposes of determining whether an error affected the verdict, does not permit us to weigh evidence and resolve factual disputes regarding a defendant's guilt" despite the state's characterization of the evidence weighing against the instruction as "overwhelming"). As the Supreme Court held in *Naylor,* the question in this circumstance is whether

there is "a disputed issue of fact enabling the jury to find that all the elements of the greater offense have not been proven, but that all the elements of one or more of the lesser offenses have been proven." 291 Or at 195.

*State v. Leckenby*, 200 Or App 684, 117 P3d 273 (2005), also is instructive. There, the defendant had been charged with first-degree arson and requested a jury instruction on the lesser-included offense of reckless burning. After a long evening of drinking, the defendant had been arrested for DUII, released from custody, and then ejected from a bar for extreme intoxication and fighting with his girlfriend. When the defendant returned home, he found himself locked out. *Id.* at 686. Still intoxicated, the defendant broke a window, crawled through, and then, according to his theory of the case, lit a road flare because it was dark and then accidentally dropped the flare when it burned his arm. The state, on the other hand, argued that the defendant had intentionally used the road flare to burn the home. *Id.* at 688.

On appeal, the defendant argued that he was entitled to an instruction on the lesser-included offense of reckless burning because there was evidence in the record to support that instruction. We agreed:

> "As noted, there was evidence that defendant was intoxicated at the time that he was released from custody after his DUII arrest and when police arrived at the duplex in response to the 9-1-1 dispatch. Also, the state did not dispute that defendant was intoxicated when he crawled through the window and entered the duplex. There was evidence from which it could be found that defendant intentionally lit the flare but accidentally dropped it to the kitchen floor after it burned him. That evidence would support a finding that defendant acted recklessly in burning the floor."

*Id.* at 689.

As were the circumstances in *Leckenby* and *Boyce*, here, the disputed issue is whether defendant acted (by using the knife) with the requisite mental state. Defendant's testimony about the effects of his head injuries was relevant to his ability to form that mental state. Although the jury was not required to believe that testimony, the jury could

have believed a "composite" of the state's and defendant's theories of the case: that is, that, because of his head injuries, defendant had not known that he was striking the victim with the knife during the second altercation. Accordingly, the trial court erred in declining to instruct the jury on the lesser-included offense of fourth-degree assault.[7]

Conviction for second-degree assault reversed and remanded; remanded for resentencing; otherwise affirmed.

---

[7] The state does not argue that the error, if any, was harmless. Had the state done so, however, we would reject that argument for the reasons set out in *Berry*:

"However strong the state's evidence is regarding the [element distinguishing the greater offense from the lesser-included offense] that factual dispute is squarely within the province of the jury, and is one that should be resolved in the first instance by a jury that has been correctly instructed about the law[.]"